UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JAMES AUSTIN ,

                                    Plaintiff,

v.

R. WALKER; M. GLYNN; S.
ROBERTS; JIN YU; J. LEWIS; AND
DOES 1–10,

                                    Defendants.

Case No.:  16cv2088-CAB-JLB

**ORDER ON DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT [Doc. No. 41]**

On October 30, 2017, Defendants filed a motion for summary judgment in this matter.  [Doc. No. 41.][1]  For the reasons set forth below, the motion for summary judgment is **GRANTED**.

On September 15, 2017, Defendants were granted an extension of time to file this motion for summary judgment.  [Doc. No. 37.]  Defendants, and the Court, notified Plaintiff of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).  [Doc. Nos. 41-1, 43.]  The Court granted the parties' joint motion to

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

continue summary judgment motion dates, and granted Plaintiff two additional extensions of time to file an opposition to the motion for summary judgment. [Doc. Nos. 52, 57, 60.] On July 18, 2018, Plaintiff filed some response to the MSJ [*See* Doc. No. 62 at 3, ll. 1-28], in conjunction with a third request for extension of time, which was denied [*See* Doc. No. 63.]

## I. STATEMENT OF FACTS

Plaintiff James Austin ("Plaintiff"), an inmate of R. J. Donovan Correctional Facility ("RJDCF") proceeding *pro se* and *in forma pauperis*, filed this civil rights action alleging various claims arising from treatment he received for prostate cancer during his incarceration. Plaintiff contends that by denying his request for proton beam radiation therapy, and instead treating him with conventional intensity-modulated radiation (X-ray) therapy, Defendants were deliberately indifferent to his serious medical need in violation of 42 U.S.C. § 1983. [Doc. No. 1 at 8.] Plaintiff further asserts that Defendants are liable under California state law for violations of California Government Code § 845.6, and for violations of Article I, Sections 15 and 17 of the California Constitution. [*Id.* at 43.] Defendants now move for summary judgment in their favor on Plaintiff's § 1983 claims, and move to dismiss Plaintiff's state law claims. [Doc. No. 41.]

### A. Plaintiff's Medical History and Diagnosis

At the time of the events at issue, Plaintiff was a 72-year-old man. [Doc. No. 1 at 54.] Plaintiff has a family history of prostate cancer—all six grandchildren on his maternal side have suffered from prostate cancer. [*Id.*] Plaintiff's brother was successfully treated for prostate cancer using proton therapy at Loma Linda University Medical Center in 2009. [*Id.* at 57.]

Neither party disputes the following factual history. On December 16, 2014, Quest Diagnostic Laboratory reported that Plaintiff's Prostate Specific Antigen (PSA) was 5.1, which may indicate prostate cancer. [*Id.* at 24.] Plaintiff consulted with a private physician, urologist Dr. James Fawcett, on January 9, 2015, and later with his primary care physician at RJDCF, Dr. Jin Yu, on January 22, 2015. [*Id.* at 27–28.] Plaintiff then

underwent a biopsy performed by Dr. Fawcett on May 8, 2015.  [*Id.*]  On May 28, 2015, twenty days after his biopsy, Plaintiff was diagnosed with intermediate risk prostate cancer by Dr. Fawcett during a Telemedicine visit.  [*Id.* at 27.]

## B. Plaintiff's Treatment

When Plaintiff was diagnosed by Dr. Fawcett on May 28, 2015, Dr. Fawcett discussed treatment options with him and advised him to choose between surgery and radiation.  [Doc. No. 1-4 at 10.]  Plaintiff indicated that he would "prefer radiation therapy option," and requested proton therapy.  [*Id.*]  Dr. Fawcett "explained to him that proton therapy has no benefit over conventional radiation therapy.  Conventional radiation has a far better track record and is far less expensive."  [*Id.*]  Dr. Fawcett recommended that Plaintiff have a radiation therapy consultation.  [*Id.* at 11.]

On May 29, 2015, Plaintiff requested a consultation via a Health Care Service Request form (CDC Form 7362).  [Doc. No. 1 at 54.]  On June 9, 2015, Dr. Yu filed a Physician's Request (CDC Form 7243) for "URGENT" radiation oncology for Plaintiff.  [*Id.*]  On June 11, 2015, Dr. Yu's request was downgraded from "URGENT" to "ROUTINE" by Dr. Walker, then Chief Physician and Surgeon at RJDCF.  [Doc. No. 41-3 at 33.]  Nevertheless, prison staff scheduled a consultation for Plaintiff to see Dr. Rahn on June 30, 2015.  [*Id.*]

On June 30, 2015, Plaintiff attended a consultation with radiation oncologist Dr. Douglas Rahn, a private specialist at UCSD in Chula Vista.  [*Id.* at 38.]  At the consultation, Plaintiff was "adamant about pursuing proton therapy" based on his own research.  [*Id.*]  Dr. Rahn recommended X-ray therapy and Plaintiff was "offered treatment," but Plaintiff "refused because he wanted proton therapy."  [*Id.* at 58.]  Dr. Rahn explained that he could refer Plaintiff to one of his colleagues who treats patients at the Scripps proton center in La Jolla.  [*Id.* at 38.]  However, Dr. Rahn was "not sure if [Plaintiff's] insurance [would] cover proton therapy," and if not, he explained that "X-ray therapy with IMRT is a very appropriate treatment for him."  [*Id.*]  RJDCF received Dr. Rahn's final Consultation Report, including an Authorization Request for X-ray

Intensity-Modulated Radiation Therapy (IMRT) marked "Medically Urgent," on July 22, 2015. [*Id.* at 43.]

When Plaintiff next met with Dr. Yu on July 27, 2015, Dr. Yu issued a Physician's Order (CDC Form 7221) for prison staff to schedule Plaintiff for a proton therapy consultation with the specialist recommended by Dr. Rahn. [*Id.* at 53.] When Dr. Yu discovered that the proton therapy specialists were not in Dr. Rahn's group, he filed a Physician's Request for a proton therapy referral on August 13, 2015. [*Id.* at 55.] On August 17, 2015, Dr. Walker promptly denied Dr. Yu's request. [*Id.* at 56.] Dr. Yu then submitted a new Physician's Request for X-ray radiation therapy on August 20, 2015, which Dr. Walker immediately approved on August 21, 2015. [Doc. No. 1 at 57.]

Plaintiff decided to proceed with the X-ray therapy while he appealed the denial of the proton therapy. [*Id.* at 58.] On September 4, 2015, Plaintiff was transported to UCSD South Bay Oncology, where he consulted with Dr. Rahn and consented to beginning the IMRT treatments. [*Id.*; Doc. No. 41-3 at 63.] From September 4 through November 20, 2015, Plaintiff underwent forty-five IMRT treatments for his prostate cancer. [Doc. No. 41-3 at 65.] At a follow-up appointment with Dr. Rahn on February 23, 2016, Dr. Rahn noted that Plaintiff's PSA had fallen from 5.1 to 2.8, and recommended that his PSA be checked every three months. [*Id.* at 69.] By September 26, 2016, Plaintiff's PSA had fallen even further to 1.5. [*Id.* at 74.] However, Plaintiff continued to suffer from side effects, and "will require further monitoring on a continuing basis." [Doc. No. 1 at 58.]

## C. Plaintiff's Administrative Grievances

Throughout this time, Plaintiff filed several administrative requests and grievances regarding the denial of proton therapy and the delay between each event allegedly amounting to "deliberate indifference." [*Id.* at 24–26, 55.] From March 2015 to May 2016, Plaintiff was seen by several RJDCF medical personnel in response to his requests, including Registered Nurse (R.N.) Gines, R.N. Alexander, R.N. Kaestner, R.N. Azzam, R.N. Thomas, and R.N. Ford. [*Id.* at 24–26.]

4

On July 24, 2015, Plaintiff filed a Health Care Appeal (CDC Form 602-HC) requesting that RJDCF "schedule and expedite the consultation and treatment recommended by Dr. Rahn (for Proton Therepy [sic] treatment)." [*Id.* at 56.] The appeal was received by RJDCF on July 28, 2015. [*Id.*] On September 14, 2015, Dr. Walker denied the 602-HC appeal at the First Level. [*Id.*] On September 21, 2015, Plaintiff submitted the 602-HC to the Second Level as an "emergency appeal." [*Id.*] California Correctional Health Care Services (CCHCS), the federal receiver overseeing California prison medical programs, did not accept Plaintiff's Second Level appeal as an "emergency" based on their criteria. [*Id.* at 57.] On October 22, 2015, Defendants Roberts and Glynn denied the appeal at the Second Level. [*Id.* at 19.] On February 9, 2016, Defendants Lewis and Godwin ("known as John Doe") denied the appeal at the Third Level. [*Id.* at 20.]

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). It is the moving party's burden to show there is no factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to show there is a genuine issue for trial. *Id.* at 331. [2]

The Court considers the record as a whole and draws all reasonable inferences in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The Court does not make credibility determinations or weigh conflicting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Rather, the Court determines whether the record "presents a sufficient

---

[2] In his briefing, Plaintiff cites to the burden of proof for motions brought pursuant to Fed.R.Civ.P. Rule 12(b)(6). *See* Doc. No. 62 at 3. However, this is a motion for summary judgment brought pursuant to Fed. R.Civ.P. Rule 56(c) and, therefore, a different standard applies.

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## III.  DISCUSSION

Plaintiff has four causes of action: two federal claims brought pursuant to 42 U.S.C. § 1983 ("Section 1983") (Eighth Amendment violation, and inadequate medical care), and two state law claims (medical negligence/malpractice, and violations of Article I, Sections 15 and 17 of the California Constitution).  [Doc. No. 1 at 8.]  For purposes of the present motion before the Court, the Court will consider Plaintiff's first two causes of action as one single claim brought under Section 1983.  Defendants move for summary judgment on Plaintiff's federal claims, and move to dismiss Plaintiff's state law claims.

### A. Section 1983 Claims

Plaintiff brings his claims under Section 1983 alleging inadequate medical care in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Plaintiff alleges that Defendants violated his Eighth Amendment rights when they knowingly failed to provide him with adequate, timely medical care for his prostate cancer.  [*Id.* at 38.]  Specifically, Plaintiff asserts that Defendants "intentionally delayed in providing Plaintiff prostate cancer treatment," which resulted in "unnecessary additional harm to Plaintiff by allowing the prostate cancer to further attack good cells, and spread further."  [*Id.* at 34.]  Additionally, Plaintiff claims that he was provided with "constitutionally inadequate medical care" by being denied access to proton therapy, and that Defendants "knew IMRT causes added injury and/or harm to healthy cells" and does not "prevent reoccurrences and/or side effects."  [*Id.* at 42.]  Defendants argue that summary judgment should be granted in their favor on Plaintiff's § 1983 claims because Plaintiff cannot show that Defendants were deliberately indifferent; Defendants are entitled to qualified immunity; and Defendants, in their official capacities, may not be sued for money damages.  [Doc. No. 41-2 at 18–30.]

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious

medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In order to show an Eighth Amendment violation, an inmate must demonstrate "both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)). First, Plaintiff must objectively show that the deprivation alleged was sufficiently serious. *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). A medical need is "serious" if the failure to treat an inmate's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104).

Here, Defendants do not dispute that Plaintiff's prostate cancer constituted a serious medical need. [Doc. No. 41-2 at 25.] Thus, for purposes of a motion for summary judgment, the Court concludes that Plaintiff has proven the first component of an Eighth Amendment claim under Section 1983.

Second, Plaintiff must show that the specific defendants acted with deliberate indifference to the inmate's serious medical needs. *See Estelle*, 429 U.S. at 104. A prison official acts with deliberate indifference if the official subjectively "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Toguchi*, 391 F.3d at 1057. Plaintiff must show that the treatment provided was "medically unacceptable under the circumstances," and that the prison doctors "chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This may be evidenced by, for example, intentionally denying or delaying access to medical care, or intentionally interfering with prescribed treatment. *Estelle*, 429 U.S. at 104–05.

If a prison official responded reasonably to a risk to the prisoner's health, even if harm was not ultimately avoided, he or she cannot be considered deliberately indifferent. *Farmer*, 511 U.S. at 844. An inadvertent failure to provide adequate medical care, a mere delay in providing care (without more), or a difference of opinion over proper medical treatment are all similarly insufficient to constitute deliberate indifference. *See*

*Estelle*, 429 U.S. at 105–07; *see also Toguchi*, 391 F.3d at 1059–60.  Further, it is not enough that the plaintiff merely disagree with the course of treatment provided.  *Toguchi*, 391 F.3d at 1058.  As long as a defendant "decides on a medically acceptable course of treatment, his actions will not be considered deliberately indifferent even if an alternative course of treatment was available." *Tilford v. Chau*, No. 12cv2507-GPC (MDD), 2014 WL 2965320, at *12 (S.D. Cal. July 1, 2014) (internal citations omitted).

### 1. Difference of Medical Opinion Regarding Treatment Options

Plaintiff alleges that by denying him proton therapy as a treatment option for his prostate cancer, Defendants were deliberately indifferent to his serious medical needs. Plaintiff states that from 2014 through 2016, Defendants "knew or should have known that the proton beam only hits the cancer area, not surrounding healthy areas, verses [sic] IMRT causes further significant injury by destroying healthy cells . . . constitut[ing] deliberate indifference."  [Doc. No. 1 at 40.]

As discussed above, a difference in medical opinion regarding the proper treatment for a patient is "insufficient, as a matter of law, to establish deliberate indifference." *Toguchi*, 391 F.3d at 1058 (citing *Jackson*, 90 F.3d at 332).  Even if Plaintiff himself disagrees with the chosen course of treatment, this is still not enough to prevail on a claim involving a choice between alternative courses of treatment.  *Id.*  Rather, Plaintiff must show that the chosen treatment (IMRT) was "medically unacceptable under the circumstances," and chosen by Defendants "in conscious disregard of an excessive risk to the prisoner's health."  *Id.*

There is no evidence in the record to suggest that the treatment plan prescribed to Plaintiff was medically unacceptable or even questionable.  Several doctors—including Dr. Fawcett and Dr. Rahn—recommended that Plaintiff undergo conventional X-ray therapy rather than proton therapy because it was an equal or superior treatment in all regards.  [Doc. No. 1-4 at 10; Doc. No. 41-3 at 38.]  The decision to provide Plaintiff with IMRT was based on the judgment of experienced medical professionals, who reasonably believed that IMRT would be a proper treatment for Plaintiff's cancer.  While

Plaintiff provided the Court with evidence of the benefits of proton therapy, he has not shown that IMRT was medically unacceptable for him in the circumstances, nor that Defendants chose to proceed with IMRT in conscious disregard of an excessive risk to Plaintiff's health. [Doc. No. 1 at 20–21.] In fact, Plaintiff's PSA has significantly decreased since undergoing IMRT, and he has exhibited no signs of treatment failure. [Doc. No. 41-3 at 69.] Therefore, Plaintiff has not shown that providing him with IMRT rather than proton therapy amounted to deliberate indifference by Defendants.

### 2. Alleged Delay in Providing Medical Treatment to Plaintiff

Plaintiff claims that from January 2015 (when Dr. Fawcett recommended Plaintiff undergo a biopsy) through May 2015 (when the biopsy occurred), Defendants Walker, Glynn, Roberts, Yu, and "John Doe" "intentionally delayed in providing Plaintiff prostate biopsy medical treatment [which] shows deliberate disregard for his serious medical needs." [Doc. No. 1 at 34.] Plaintiff also claims that from May 2015 (when Plaintiff was diagnosed with prostate cancer) through September 2015 (when his IMRT treatment began), Defendants Walker, Glynn, Roberts, Yu, and "John Doe" "intentionally delayed in providing Plaintiff prostate cancer treatment [which] shows deliberate disregard for his serious medical need to an aggressive cancer cells." [*Id.*]

A delay in treatment that does not cause substantial harm does not constitute an Eighth Amendment violation. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). In order to prove deliberate indifference, Plaintiff must show that each alleged delay caused him substantial harm as a result. *See id.* However, drawing all reasonable inferences in the light most favorable to Plaintiff, the Court does not find that any alleged delay in Plaintiff's medical care caused him substantial harm.

In his Complaint, Plaintiff did not provide any evidence to substantiate his allegations that both delays caused him substantial harm. Regarding the first delay from January to May 2015, the record reflects that Dr. Yu acted efficiently and made reasonable efforts to expedite Plaintiff's biopsy. After Dr. Fawcett recommended a biopsy on January 9, 2015, Dr. Yu met with Plaintiff on January 22, 2015 to discuss Dr.

9

Fawcett's findings, and issued a referral for biopsy that same day. [Doc. No. 41-3 at 11.] On March 24, 2015, Dr. Yu met with Plaintiff and assured him that a "referral for biopsy was already put in place," and was "pending approval and scheduling." [*Id.* at 14.] On April 28, 2015, Dr. Yu again met with Plaintiff and explained to him that he was "already scheduled to have a biopsy in less than 14 days." [*Id.* at 16.] On May 19, 2015, eleven days after the biopsy, Dr. Yu met with Plaintiff to explain to him that Dr. Fawcett wanted to see him again to discuss his results. [*Id.* at 24.] Dr. Yu's actions between Plaintiff's initial visit with Dr. Fawcett and the biopsy prove only that he provided Plaintiff with diligent, attentive care. There is nothing in the record to show that Dr. Yu's actions during this period caused Plaintiff substantial harm, and Defendants Walker, Glynn, and Roberts were not involved in Plaintiff's care whatsoever until after the biopsy.

Regarding the second delay from May to September 2015, the record again reflects that Dr. Yu acted diligently to expedite Plaintiff's treatment, and that Dr. Walker quickly reviewed and returned all requests and grievances presented to him during that time. Plaintiff has provided no evidence that he suffered substantial harm as a result of this delay in treatment—in fact, as stated above, the IMRT treatment was ultimately successful and reduced his PSA level. Moreover, any delay in treatment that occurred between May and September 2015 may be attributable to Plaintiff's own refusal to undergo IMRT while he awaited an answer to his request for proton therapy. Plaintiff was first offered X-ray therapy at his consultation with Dr. Rahn in June 2015, but "refused because he wanted proton therapy." [*Id.* at 58.] Any alleged delay by Defendants cannot amount to deliberate indifference where Plaintiff's own actions caused or contributed to the delay. *See Williams v. Shelton*, No. 06-cv-95-KI, 2008 WL 2789031, at *2 (D. Or. July 16, 2008) (holding that a delay in treatment did not amount to deliberate indifference where the plaintiff contributed to the delay by not following doctor's orders). Finally, Defendants Glynn and Roberts were still not involved in Plaintiff's care at the time, and did not become involved until they reviewed Plaintiff's 602-HC appeal in October 2015. As a result, the Court is not persuaded that any alleged

delay in providing treatment caused Plaintiff to suffer substantial harm, nor that any Defendant was deliberately indifferent in this regard.

### 3. Defendant Yu Was Not Deliberately Indifferent

Defendant Yu is a doctor at RJDCF, and was Plaintiff's primary care physician at all times relevant to this action. [Doc. No. 1 at 12.] Plaintiff contends that Dr. Yu is "personally responsible for enforcing CDCR medical policies that guarantee medical care for his patients, and responsible for untoward consequences in the medical treatment of [Plaintiff]." [*Id.*]

A review of the record before the Court reveals that Dr. Yu provided Plaintiff with prompt, reasonable and professional medical care. Plaintiff states that after Dr. Fawcett requested a prostate biopsy on January 9, 2015, Dr. Yu wrote in his progress notes on January 22 that a "referral for biopsy is done today." [*Id.* at 33.] On March 24, 2015, Dr. Yu wrote in his notes, "a referral for a biopsy was put in place, pending approval and scheduling." [*Id.*] After Plaintiff met with Dr. Rahn to discuss treatment options on June 30, 2015, Dr. Yu submitted a referral for Plaintiff to see a specialist in Dr. Rahn's group on July 27, 2015. [*Id.* at 35.] When Dr. Yu learned that no such specialist existed, he submitted a new order requesting a proton therapy referral for Plaintiff on August 13, 2015. [*Id.* at 36.] At every instance, the record shows that Dr. Yu was attentive to Plaintiff's medical needs and acted quickly to fulfill his requests. Therefore, the Court finds that Dr. Yu was not deliberately indifferent to Plaintiff's medical needs, and **GRANTS** summary judgment in favor of Dr. Yu on Plaintiff's Eighth Amendment claim.

### 4. Defendant Walker Was Not Deliberately Indifferent

Defendant Walker was Chief Physician and Surgeon at RJDCF at all times relevant to this action. [*Id.* at 11.] Though it is not disputed that Dr. Walker never personally treated Plaintiff, Plaintiff argues that Dr. Walker is "personally involved in Plaintiff's medical care when he denies or approves physician's request[s] for services," and thus should be liable under § 1983. [*Id.* at 23.] Specifically, Plaintiff contends that Dr. Walker "deliberately denied the proton therapy for Plaintiff knowing he had prostate

16cv2088-CAB-JLB

cancer," and "did not allow Plaintiff to have proton therapy because of cost." [*Id.* at 28, 36.]

Generally, liability is not imposed on a medical officer who only acted to review and deny an inmate's appeal. *Alvarez v. Ko*, No. 16-CV-1302-CAB-NLS, 2018 WL 1693196, at *11 (S.D. Cal. Apr. 6, 2018); *accord Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that the "denial of administrative grievances or the failure to act" cannot be the basis of liability under § 1983). However, a medical officer who reviews and denies an appeal is liable under the Eighth Amendment when a plaintiff can show that the officer "knew, at least in part, from reading the appeal that the plaintiff had a serious medical issue and nevertheless chose not to offer treatment." *Pogue v. Igbinosa*, No. 1:07cv–01577–GMS, 2012 WL 603230, at *9 (E.D. Cal. Feb. 23, 2012).

In this case, Plaintiff has not presented evidence that Dr. Walker "chose not to offer treatment." *Id.* Although Dr. Walker downgraded Dr. Yu's request for Plaintiff to be evaluated from "URGENT" to "ROUTINE" on June 11, 2015, Plaintiff was still scheduled for a consultation with Dr. Rahn on June 30, 2015. [Doc. No. 41-3 at 33.] Plaintiff also claims that Dr. Walker was deliberately indifferent when he denied Dr. Yu's Physician Request for Plaintiff to receive proton therapy on August 17, 2015. [Doc. No. 1 at 36.] However, while Dr. Walker did not approve the request for proton therapy, he promptly approved Dr. Yu's subsequent request for Plaintiff to receive IMRT one day after it was submitted. [*Id.* at 57.] Finally, though Plaintiff contends that Dr. Walker denied him services to save costs, the only "evidence" Plaintiff has provided to support this allegation is the testimony contained in his own Complaint. As Plaintiff's own statements are insufficient to create a dispute of material fact, he has not provided the Court with enough evidence to defeat summary judgment on this issue. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Accordingly, Plaintiff has not shown that Dr. Walker

was deliberately indifferent to Plaintiff's medical needs, and the Court **GRANTS** summary judgment in favor of Dr. Walker on Plaintiff's Eighth Amendment claim.

### 5. Defendants Roberts, Glynn, and Lewis Were Not Deliberately Indifferent

Defendant Roberts was Chief Medical Executive at RJDCF at all times relevant to this action. [Doc. No. 1 at 10.] Defendant Glynn was Chief Executive Officer at RJDCF at all times relevant to this action. [*Id.* at 11.] Defendant Lewis was Deputy Director, Policy and Risk Management Services, at California Correctional Health Care Services at all times relevant to this action. [Doc. No. 1-2 at 17.] Plaintiff argues that Dr. Roberts and Glynn were deliberately indifferent to Plaintiff's medical needs because they denied his 602-HC Health Care Appeal at the Second Level. [Doc. No. 1 at 57.] Plaintiff further asserts that Lewis was deliberately indifferent because she denied Plaintiff's 602-HC Health Care Appeal at the Third Level, and is "directly liable and responsible for" the "unlawful acts, policies, and [sic] practices" of the other Defendants. [*Id.* at 39.] Plaintiff appears to rely on a combination of deliberate indifference and supervisory liability to assert his claims against Defendant Lewis.

As discussed above, a prison official's mere administrative review of a prisoner's Health Care Appeal generally cannot serve as the basis of the official's liability under § 1983. *Dragasits v. Yu*, No. 16-cv-1998 BEN (JLB), 2017 WL 3141802, at *14 (S.D. Cal. July 24, 2017). Further, Plaintiff provided no evidence of either Roberts, Glynn or Lewis knowing of Plaintiff's serious medical issue and choosing not to offer him treatment. In the Institution Response for Second Level HC Appeal, Dr. Roberts and Glynn explained that Plaintiff's radiation therapy was "approved, is scheduled, and will continue through the final treatment of [IMRT]." [Doc. No. 1-2 at 14.] The Response also stated that Plaintiff was being "evaluated, treated, monitored and educated concerning your health issues consistent with the medical plan of care as determined by your [PCP]," and was "receiving treatment consistent with . . . recognized standards of care, and your medical problems have clearly been acknowledged by professional health care staff familiar with

your medical history." [*Id.*] In the response to the Third Level HC Appeal, Lewis noted that Plaintiff "elect[ed] to proceed with IMRT/photon radiotherapy treatment," and that following treatment, Plaintiff "tolerated radiation treatment with no severe toxicities . . . the PCP determined you were doing well after treatment." [*Id.* at 16–17.] All statements made by Defendants in their reviews of Plaintiff's Health Care Appeal show that they acknowledged Plaintiff's serious medical issue, that he was offered treatment consistent with "recognized standards of care," and that his treatment was ultimately successful. Accordingly, the Court concludes that none of the three Defendants were deliberately indifferent to Plaintiff's medical needs in their review of his Health Care Appeal, and therefore **GRANTS** summary judgment in favor of Roberts, Glynn, and Lewis on Plaintiff's Eighth Amendment claim.

Next the Court must address Plaintiff's allegations of supervisory liability against Defendant Lewis. The Supreme Court has held that there is no vicarious liability for civil rights violations. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). A supervisor may be liable under § 1983 "only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (internal quotation marks omitted). In this case, Plaintiff does not allege that Lewis was personally involved in Plaintiff's medical care—Lewis's involvement was limited to an administrative review of Plaintiff's 602-HC Appeal. Thus in order for Plaintiff to prove his § 1983 claims against Lewis on a theory of supervisory liability, Plaintiff must demonstrate that there is a "sufficient causal connection" between Lewis's alleged wrongful conduct and the constitutional violation committed by someone under Lewis's supervision. *See Dragasits*, 2017 WL 3141802 at *14.

The Court finds that Plaintiff has not provided sufficient evidence to support his claim of supervisory liability against Lewis, as he has not shown that any person under Lewis's supervision deprived him of his constitutional rights. As discussed above, the record does not reflect that any of the other four named Defendants violated Plaintiff's

14

Eighth Amendment rights by acting with deliberate indifference to Plaintiff's serious medical needs. Plaintiff also has not proven that any other prison official under Lewis's supervision violated his rights. Thus, absent an underlying constitutional violation by the other Defendants or another prison official, Plaintiff cannot allege a causal connection between Lewis's conduct and a constitutional violation committed by one of Lewis's subordinates. *See id.*; *see also Roman v. Knowles*, No. 07CV1343 JLS (POR), 2009 WL 1675863, at \*4 (S.D. Cal. June 15, 2009) (holding that "even if plaintiff has pled more than a *respondeat superior* theory of liability against the defendants in supervisory positions, the claims will still be dismissed because . . . plaintiff failed to plead an underlying constitutional violation."). As a result, the Court finds that Plaintiff has not met his burden of showing there is a genuine issue for trial, and **GRANTS** summary judgment in favor of Lewis on Plaintiff's § 1983 claim under a *respondeat superior* theory of liability.

### B. Qualified Immunity

Defendants argue that they should be entitled to qualified immunity on Plaintiff's federal § 1983 claim alleging deliberate indifference. [Doc. No. 41-2 at 24.] Because the Court has found no constitutional violation of Plaintiff's Eighth Amendment rights, the Court need not conduct an analysis under qualified immunity. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all."); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1043 (9th Cir. 2002) (finding that if no constitutional right was violated, the court need not reach the issue of qualified immunity). Nevertheless, the Court finds that even if Defendants had violated Plaintiff's Eighth Amendment rights, Defendants would be entitled to qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Qualified immunity involves a two-part inquiry: first, "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and second, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). The Court addresses each of these elements in turn.

### 1. Violation of the Eighth Amendment

As discussed above, the Court finds that Defendants did not violate Plaintiff's constitutional rights under the Eighth Amendment. However, assuming arguendo that Plaintiff's Eighth Amendment rights were violated, Plaintiff must still demonstrate that the specific right at issue here was clearly established. *See Kramer v. Cullinan*, 878 F.3d 1157, 1164 (9th Cir. 2018).

### 2. Clearly Established Right

Under the second prong of the qualified immunity test, the Court must decide if the alleged violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment "was clearly established at the time of the officer's alleged misconduct." *C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (citations omitted). If not, the officer receives qualified immunity. To be clearly established, a right must be "sufficiently clear that every 'reasonable official would [have understood] that what [the official] is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* Put another way, only the "plainly incompetent" official will not enjoy qualified immunity. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam).

Plaintiff bears the burden of demonstrating that the right at issue here was clearly established. *Kramer*, 878 F.3d at 1164. Plaintiff must present a "robust consensus of cases of persuasive authority" that demonstrate the existence of that clearly established right, *al-Kidd*, 563 U.S. at 742, and guarantee the right "in light of the specific context of

the case, not as a broad general proposition." *Mullenix*, 136 S.Ct. at 308 (citations and internal quotation marks omitted).  Applied to this case, Plaintiff must show that the right to be treated for prostate cancer with proton therapy (as opposed to IMRT) was clearly established at the time that Defendants treated Plaintiff with IMRT—specifically, as of September 4, 2015.

In his Complaint, Plaintiff contends that prison medical officials may not be deliberately indifferent to a prisoner's medical needs.  While this is true, Plaintiff has not provided the Court with any clearly established authority guaranteeing the specific right to proton therapy as treatment for prostate cancer, and thus has not met his burden to defeat Defendants' assertion of qualified immunity.[3]  Nevertheless, the Court conducted its own research on this issue, as did Defendants.  [Doc. No. 41-2 at 21.]  A thorough search of existing case law does not reveal any persuasive authority, let alone a "robust consensus of cases," that the right to treatment of prostate cancer by proton therapy is clearly established.  Therefore, even if Defendants *had* violated Plaintiff's constitutional rights, Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim is also **GRANTED** on grounds of qualified immunity.

### C. Defendants' Immunity from Suit in Their Official Capacities

Defendants argue that to the extent Plaintiff seeks money damages against them in their official capacities, "judgment should be entered in Defendants' favor because the Eleventh Amendment protects them from being sued as 'persons' under § 1983." [Doc. No. 41-2 at 30.]  The Court agrees that, to the extent Plaintiff seeks money damages against Defendants in their official capacities, they are not considered suable "persons" under 42 U.S.C. § 1983 and are thus immune from suit.  *Will v. Mich. Dep't of State*

---

[3] In his briefing, Plaintiff acknowledges the "clearly established authority" requirement, but does not provide any case authority to show that the right to treatment of prostate cancer by proton therapy is clearly established.  *See* Doc. No. 62 at 3.

*Police*, 491 U.S. 58, 71 (1989) (holding that state officials acting in their official capacities are not considered "persons" under § 1983).

The Eleventh Amendment bars suits against a state or its agencies for all types of relief, absent unequivocal consent by the state. *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999). As state officials are essentially an extension of their state agency, a suit against a state official is "no different from a suit against the State itself." *Will*, 491 U.S. at 71. Therefore, the Eleventh Amendment bars suits against defendants acting in their official capacities where the relief sought is money damages. *Romano*, 169 F.3d at 1185; *see also Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988) ("the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages").

In his Complaint, Plaintiff states that "Defendants are sued in their official and individual capacity untill [sic] otherwise notified in this case." [Doc. No. 1 at 14.] Although it is unclear whether Plaintiff seeks money damages against Defendants in their official capacities, Defendants would be immune from such an action under the Eleventh Amendment based on their status as state officials. *See Romano*, 169 F.3d at 1185. Thus to the extent that Plaintiff seeks damages against Defendants in their official capacities, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim.

However, Plaintiff also states that he is suing Defendants in their "individual capacit[ies]." [Doc. No. 1 at 14.] Officials are presumed to be sued in their individual capacities "where those officials are named in a complaint, even if the complaint does not explicitly mention the capacity in which they are sued." *Romano*, 169 F.3d at 1186. In his Complaint, Plaintiff specifically named Defendants Walker, Glynn, Roberts, Yu, and Lewis, so the Court may presume they are being sued in their individual capacities. In order to state a § 1983 claim against an individual, a plaintiff must allege facts which show that the individual defendant, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the Constitution or federal law. *Lopez v.*

*Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) (internal citations omitted).  As discussed above, the record does not reflect that any of the named defendants deprived Plaintiff of his rights under the Eighth Amendment.  Thus, as Plaintiff has not met his burden of showing a genuine issue for trial, Defendants are entitled to summary judgment on Plaintiff's § 1983 claim regardless of whether Plaintiff is suing them in their official or individual capacities.

### D. State Law Claims

In his third and fourth causes of action, Plaintiff incorporates by reference all factual allegations made in support of his Eighth Amendment claim, and asserts two state law claims against Defendants: the first of medical negligence and malpractice in violation of California Government Code § 845.6, and the second of a violation of Article I, Sections 15 and 17 of the California Constitution.  [Doc. No. 1 at 43, 48.]  Defendants argue that Plaintiff's state law claims should be dismissed, as there is no private right of action under Article I §§ 15, 17 of the California Constitution; Defendants met the requisite standard of care for prostate cancer; and Plaintiff's Complaint fails to allege compliance with the claims presentation requirement of the California Tort Claims Act.[4] [Doc. No. 41-2 at 30–32.]

### 1. First Claim of Medical Negligence and Malpractice in Violation of California Government Code Section 845.6

Plaintiff first claims that Defendants violated California Government Code Section 845.6 by knowing that Plaintiff "was in need of immediate medical care," and "fail[ing] to take reasonable action to summon such medical care as biopsy, and proton therapy specialist."  [Doc. No. 1 at 43.]  Further, Plaintiff alleges that from 2014 through

---

[4] Qualified immunity does not extend to Plaintiff's state law claims.  *See C.V. by and through Villegas v. City of Anaheim*, 823 F.3d 1252, 1257 (9th Cir. 2016); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) ("California law is clear that the doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees" (citations, alterations, and internal quotation marks omitted)).

2016, Defendants "knowingly denied, delayed, or interfered with treatment of Plaintiff's serious medical needs, or knowingly provided medically unacceptable care that caused harm to Plaintiff." [*Id.* at 45.]

California Government Code Section 845.6 states:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but . . . a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

Cal. Gov't Code § 845.6.

The Ninth Circuit has held that liability under Section 845.6 is "limited to serious and obvious medical conditions requiring immediate care." *Jett v. Penner*, 439 F.3d 1091, 1099 (9th Cir. 2006) (quoting *Watson v. State*, 21 Cal. App. 4th 836, 841 (1993)). Section 845.6 is "very narrowly written" to create a limited cause of action against a public entity "for its employees' failure to *summon* immediate medical care only, not for certain employee's malpractice in providing that care." *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013) (citing *Watson*, 21 Cal. App. 4th at 841) (emphasis added). For example, decisions made regarding a plaintiff's medical care are a "matter of professional judgment exercised during the provision of medical care," and therefore are issues of medical malpractice, not of a failure to summon. *See id.* at 1072–73.

While it is undisputed that Plaintiff's prostate cancer constitutes a serious medical condition, Plaintiff has not shown that Defendants failed to take reasonable action to summon immediate medical care. Plaintiff asserts that Defendants failed to provide him with a biopsy and proton therapy treatment while knowing that he was in need of immediate medical care. However, Plaintiff's claims are unsubstantiated by the evidence before the Court. The record instead reflects that Dr. Yu and other medical professionals at RJDCF promptly summoned medical care for Plaintiff by way of several

16cv2088-CAB-JLB

referrals, Physician Requests, and Physician Orders. Dr. Yu "summoned" a biopsy, or submitted his first request for a biopsy referral, on January 22, 2015—thirteen days after Dr. Fawcett recommended a biopsy. [Doc. No. 1 at 33.] Dr. Yu also "summoned" a proton therapy specialist for Plaintiff by submitting two separate requests for a referral on July 27, 2015 and August 13, 2015, respectively. [*Id.* at 35.] The first referral was submitted a mere five days after RJDCF received Dr. Rahn's final Consultation Report recommending such a referral. [Doc. No. 41-3 at 43.] Overall, the record shows that Dr. Yu assessed Plaintiff on several occasions, referred him for further consultations with other medical professionals, discussed various treatment options with him, and sent him to Dr. Rahn for his successful IMRT treatment. The Court finds that these actions constitute the immediate "summoning" required by § 845.6.

Moreover, Plaintiff's labeling of his third cause of action as "Medical Negligence and Malpractice in Violation of California Gov. Code § 845.6" is a misnomer, as § 845.6 does not apply to claims of medical negligence or malpractice. *See Castaneda*, 212 Cal. App. 4th at 1070 ("[Section 845.6] does not create liability of the public entity for malpractice in furnishing or obtaining that medical care."); *see also Nelson v. State*, 139 Cal. App. 3d 72, 81 (holding that medical malpractice cannot be characterized as a failure to summon medical care). Even if Dr. Yu acted negligently in providing medical care to Plaintiff, the decisions of medical personnel involving the exercise of medical judgment are not "subject to review in tort suits for damages." Cal. Gov't Code § 845.6, Law Revision Comm'n Cmt., 1963 Addition. Therefore, Plaintiff's claims that Defendants were negligent and committed medical malpractice cannot be brought under § 845.6. Finally, even if claims for medical negligence could be brought under Section 845.6, there is no evidence before the Court that Defendants' conduct did not conform to the standard of care.

Accordingly, Defendants' motion for summary judgment as to the third cause of action is **GRANTED.**

16cv2088-CAB-JLB

## 2. Second Claim of Violation of Article I, Sections 15 and 17 of the California Constitution

In his final cause of action, Plaintiff claims that:

> In subjecting Plaintiff to improper conditions of confinement, Defendants . . . deprived Plaintiff of his California Constitutional rights to be free from cruel and unusual punishment, in violation of Article I, § 17, and due process of law, in violation of Article I, § 15, thus entitling Plaintiff to obtain compensatory damages from all Defendants directly under the California Constitution.

[Doc. No. 1 at 48.]

Defendants argue the Court should dismiss Plaintiff's claims under the California Constitution as a matter of law, as there is no private right of action to recover damages for alleged violations of Article I, Sections 15 and 17. [Doc. No. 41-2 at 30.]

The Court agrees with Defendants that no damages action is available under Article I, Sections 15 and 17 of the California Constitution. *See Rodriguez v. Kwok*, No. C 13-04976 SI, 2014 WL 889570, at *4 (N.D. Cal. Mar. 3, 2014) ("The California Constitution does not provide a private right of action for damages to remedy an asserted violation of Article I, Section 15 of the California Constitution."); *see also Santana v. Zhang*, No. 3:16-cv-00105-GPC-JMA, 2016 WL 4917118, at *13–14 (S.D. Cal. Sept. 15, 2016) ("[B]y its own terms, § 15 is applicable only in criminal cases . . . [T]here is no private cause of action for money damages under Article I, section 17."). Accordingly, Defendants' motion for summary judgment as to the fourth cause of action is **GRANTED**.

## 3. Plaintiff's Noncompliance with the California Tort Claims Act

Finally, Defendants argue that Plaintiff did not comply with the California Tort Claims Act's requirement that a person asserting a tort claim against a California governmental entity or employee present his claim to the California Victim Compensation and Government Claims Board before filing an action for damages against that entity or employee. *See* CAL. GOV'T CODE §§ 905.2, 911.2, 945.4, 950–950.2. [Doc. No. 41-2 at 31.]

The California Tort Claims Act requires that a person present his tort claim to the Claims Board within six months of the accrual of the claim, and that any suit based on the claim presented be commenced within six months from the date the Claims Board's written notice of rejection is deposited in the mail. *Dragasits*, 2017 WL 3141802 at *17 (internal citations omitted). Compliance with the Act's strict requirements "is an element of the cause of action, is required, and a failure to file a claim is fatal to a cause of action." *King v. Chokatos*, No. 1:12-cv-01936-LJO-GSA-PC, 2014 WL 3362237, at *5 (E.D. Cal. July 9, 2014) (internal citations omitted). Therefore, a plaintiff must allege facts in their complaint demonstrating or excusing compliance with the Act's claim presentation requirement. *See id.*

Here, the Court has thoroughly reviewed Plaintiff's Complaint and finds that it fails to allege facts demonstrating or excusing compliance with the California Tort Claims Act. Therefore, because noncompliance with the Act is fatal to a Plaintiff's state law claims, Defendants' motion for summary judgment as to the state law claims is also **GRANTED** on the grounds of failure to comply with the California Tort Claims Act.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment [Doc. No. 41] as to all of Plaintiff's claims is **GRANTED**. Judgment shall be entered for Defendants and the Clerk of the Court shall **CLOSE** the case.

**IT IS SO ORDERED**.

Dated: July 30, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge

16cv2088-CAB-JLB